**No. 26-_____**

# United States Court of Appeals for the Ninth Circuit

DYWANNA DRUMMER; ANTHONY D'ANTONIO;
SCHALISE LEE; CYNTHIA RUBIO; and MARY LEE WALLACE,
Individually and on Behalf of All Other Similarly Situated,

*Plaintiffs-Respondents*,

v.

COSTAR GROUP, INC.,

*Defendant-Petitioner*.

On Petition for Permission to Appeal from the
United States District Court for the Central District of California
No. 5:25-cv-01047-JGB-SP (Hon. Jesus G. Bernal)

**PETITION FOR PERMISSION TO APPEAL
PURSUANT TO 28 U.S.C. § 1292(b)**

Alexander C.K. Wyman
LATHAM & WATKINS LLP
355 South Grand Avenue
Suite 100
Los Angeles, CA 90071
(213) 485-1234

Nicholas J. Boyle
Blake E. Stafford
LATHAM & WATKINS LLP
555 Eleventh Street NW
Suite 1000
Washington, DC 20004
(202) 637-2200

Michael H. Rubin
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
(415) 395-0600
michael.rubin@lw.com

*Counsel for Defendant-Petitioner CoStar Group, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Petitioner CoStar Group, Inc. ("CoStar") states that CoStar has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

## TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ..........................................................i

TABLE OF AUTHORITIES ................................................................ iii

INTRODUCTION .......................................................................1

QUESTION PRESENTED ................................................................3

RELIEF SOUGHT.......................................................................3

BACKGROUND ........................................................................4

REASONS FOR GRANTING THE PETITION.........................................7

    A.    The Order Involves A Controlling Question Of Law .........................7

    B.    There Is Substantial Ground For Difference Of Opinion ....................9

    C.    An Interlocutory Appeal May Materially Advance The Termination Of This Litigation ...........................................12

    D.    The Court Should Exercise Its Discretion To Review This Important Question..............................................................13

CONCLUSION .......................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Bradshaw v. Lowe's Cos.*,
No. 25-cv-0742, 2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) ........................11

*Cadkin v. Loose*,
569 F.3d 1142 (9th Cir. 2009) .............................................................................3

*Canela v. Costco Wholesale Corp.*,
971 F.3d 845 (9th Cir. 2020) .............................................................................13

*In re Cement Antitrust Litigation*,
673 F.2d 1020 (9th Cir. 1981) .........................................................................8, 9

*Cunningham v. Cornell University*,
604 U.S. 693 (2025)...........................................................................................15

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006)...........................................................................................13

*Dawidzik v. Tesla, Inc.*,
No. 25-cv-01982, 2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) ......................11

*Hartman v. Summers*,
120 F.3d 157 (9th Cir. 1997) ..............................................................................7

*Healy v. Milliman, Inc.*,
164 F.4th 701 (9th Cir. 2026) ...........................................................................13

*ICTSI Oregon, Inc. v. International Longshore &*
*Warehouse Union*,
22 F.4th 1125 (9th Cir. 2022) ..............................................................9, 12, 13

*Juliana v. United States*,
947 F.3d 1159 (9th Cir. 2020) ...........................................................................13

*Keskinen v. Lush Handmade Cosmetics LLC*,
770 F. Supp. 3d 1234 (C.D. Cal. 2025) .............................................................10

iii

**Page(s)**

*Khamooshi v. Politico LLC*,
   786 F. Supp. 3d 1174 (N.D. Cal. 2025)..................................................10, 11, 15

*Kishnani v. Royal Caribbean Cruises Ltd.*,
   No. 25-cv-01473, 2025 WL 1745726 (N.D. Cal. June 24, 2025) ................12, 14

*Kuehner v. Dickinson & Co.*,
   84 F.3d 316 (9th Cir. 1996) ..................................................................................8

*Lee v. American National Insurance Co.*,
   260 F.3d 997 (9th Cir. 2001) ..............................................................................13

*Mirmalek v. Los Angeles Times Communications LLC*,
   No. 24-cv-01797, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ......................10

*Mitchener v. CuriosityStream, Inc.*,
   No. 25-cv-01471, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025).........................11

*National Cable & Telecommunications Association v. Brand X
   Internet Services*,
   545 U.S. 967 (2005).............................................................................................4

*Popa v. Microsoft Corp.*,
   153 F.4th 784 (9th Cir. 2025) ...............................................................................2

*Reese v. BP Exploration (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011) ...................................................................7, 8, 9, 12

*Rodriguez v. Culligan International Co.*,
   No. 25-cv-00225, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ........................11

*Shah v. Fandom, Inc.*,
   754 F. Supp. 3d 924 (N.D. Cal. 2024).............................................................9, 10

*Shulman v. Kaplan*,
   58 F.4th 404 (9th Cir. 2023) ...............................................................................10

*Steel Co. v. Citizens for a Better Environment*,
   523 U.S. 83 (1998)..........................................................................................8, 10

iv

**Page(s)**

*Sterling v. Feek*,
150 F.4th 1235 (9th Cir. 2025) ....................................................................12, 13

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021).........................................................................................2, 8

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ...............................................................................4

*Wooten v. BioLife Plasma Services L.P.*,
No. 25-cv-00099, 2025 WL 2979619 (E.D. Cal. Oct. 22, 2025) .......................11

*Xu v. Reuters News & Media Inc.*,
No. 24-cv-2466, 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025).....................11, 14

**STATUTES**

28 U.S.C. § 1292(b) ........................................................................................2, 3, 7

Cal. Penal Code § 638.51 ......................................................................................1, 5

**OTHER AUTHORITIES**

Fed. R. App. P. 5(a)(2)..............................................................................................3

Fed. R. App. P. 5(a)(3)..............................................................................................3

Sarah Miller & Elizabeth Sperling, *With Rising CIPA Claims, Here's
How to Safeguard Your Business*, Bloomberg Law (Feb. 13, 2026),
https://news.bloomberglaw.com/legal-exchange-insights-and-
commentary/with-rising-cipa-claims-heres-how-to-safeguard-your-
business ............................................................................................................15

Jeffrey M. Stefan II & Neil E. Youngdahl, *The Rise of CIPA Website
Tracking Claims*, Nat'l L. Rev. (Feb. 17, 2026),
https://perma.cc/LW5D-DF86 ..........................................................................14

## INTRODUCTION

This case presents an exceptionally important and unresolved question concerning Article III standing that, as the district court recognized, has divided the district courts and demands an authoritative answer by this Court. Over the past several years, there has been a surge of class action lawsuits challenging the collection and dissemination of IP addresses and similar information plaintiffs voluntarily shared when they visited websites. Plaintiffs have increasingly turned to California Penal Code § 638.51, a provision of the California Invasion of Privacy Act (CIPA) traditionally applied to "pen register" devices physically attached to telephone lines. The theory is that the collection and transmission of IP addresses through the use of "cookies"—small text files automatically generated when a user visits a website—qualifies as illegal "pen register" activity. Given the ubiquity of cookies on the internet, these kinds of lawsuits have proliferated, producing several points of disagreement in the district courts.

One principal area of disagreement concerns whether a website's collection and transmission of user IP addresses and similar information to third parties constitutes a cognizable Article III injury. As both this Court and the Supreme Court have stressed, to establish Article III standing, the plaintiff must allege that he or she suffered a "concrete" injury—i.e., an "injury to the plaintiff [that] has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit

1

in American courts." *Popa v. Microsoft Corp.*, 153 F.4th 784, 789 (9th Cir. 2025) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021)). Accordingly, a "broad theory" of harm based on a "general right to privacy" does not suffice: The plaintiff must link the injury to a legally protected privacy interest, and it must be "benchmarked to a specific tort" at common law that "protected specific kinds of privacy-related harms." *Id.* at 791-92.

As the court below acknowledged, district courts openly disagree as to whether Internet users have Article III standing based on a privacy interest in IP addresses and similar information shared with a website and transmitted to third parties. Several courts have held that there is no legally protected privacy interest in IP addresses and similar information voluntarily disclosed to websites, and that the transmission of such information to third parties does not give rise to any harm cognizable at common law. The district court in this case disagreed with that approach, concluding that the subsequent transmission of IP addresses to third parties is enough. But it certified its order for interlocutory appeal under 28 U.S.C. § 1292(b), recognizing the lower-court split on this controlling legal question.

This Court should accept that request for guidance and grant this petition for interlocutory review. This issue is an important, unsettled, and recurring question of Article III standing in the field of Internet privacy (and particularly in CIPA actions) on which this Court has not directly opined. And as the district court

2

observed, appellate resolution of this threshold issue now would not only materially advance—if not dispose entirely of—this lawsuit, but it would also clarify an issue that is present in myriad other cases asserting similar claims under Section 638.51. Because this case satisfies all criteria for interlocutory appeal, the petition should be granted.

## QUESTION PRESENTED

Whether the transmission to third parties of user IP addresses and similar information voluntarily shared with websites constitutes a cognizable Article III injury with a close relationship to harm traditionally recognized as providing a basis for a lawsuit.

## RELIEF SOUGHT

CoStar Group, Inc. ("CoStar") requests that the Court grant permission to appeal the district court's October 22, 2025 order denying CoStar's motion to dismiss, Dkt. 41 (attached hereto as Exhibit A), as certified by the district court in an order entered on February 17, 2026, Dkt. 52 (attached hereto as Exhibit B).[1]

---

[1] Although the district court's certification order is dated February 13, 2026, the court entered the order on the docket—and the parties received the order—on February 17, 2026. The docket entry for the certification order (Dkt. 52) accordingly notes that the order was "Entered: 02/17/2026." This petition is therefore timely filed "within ten days after the entry of the order." 28 U.S.C. § 1292(b); *see* Fed. R. App. P. 5(a)(2)-(3); *Cadkin v. Loose*, 569 F.3d 1142, 1146 n.2 (9th Cir. 2009).

## BACKGROUND

This case is one of many in which class action plaintiffs have targeted websites for using quotidian software to collect IP addresses. The target in this case is CoStar, which operates Homes.com and Apartments.com. Dkt. 1 at ¶ 7 (Compl.). Plaintiffs allege that CoStar has partnered with third parties to install three types of software, which Plaintiffs call "Trackers," on the homepages of CoStar's websites. *Id.* ¶¶ 2-3, 19-22. These Trackers—which consist of the "TikTok Pixel," the "LinkedIn Insight Tag," and the "Trade Desk/Adsrvr"—allegedly enable the third parties to receive "identifying information" from website users, "including the user's unique IP address." *Id.* ¶¶ 21-23. "IP addresses identify computers on the Internet, enabling data packets transmitted from other computers to reach them." *Nat'l Cable & Telecommc'ns Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 987 n.1 (2005). Accordingly, "[e]very computer or server connected to the Internet has a unique IP address," which the user voluntarily conveys for the "purpose of directing the routing of information" in the normal course of internet browsing. *United States v. Forrester*, 512 F.3d 500, 510 & n.5 (9th Cir. 2008).

Plaintiffs allege that the Trackers receive website users' IP addresses by using "cookies," which are small text files that are "automatically generated when a user visits a website" and stored on the user's browser. Dkt. 1 at ¶ 23. The Trackers allegedly cause the browser to "send the cookie, along with the user's IP address, to

4

the third party." *Id.* ¶ 22. According to Plaintiffs, the third parties—TikTok, LinkedIn, and Trade Desk—then use the IP addresses collected by the Trackers to assist with creating targeted advertising for third-party websites. *Id.* ¶ 25.

Plaintiffs filed this lawsuit in April 2025, asserting a single claim under Section 638.51 of CIPA. *Id.* ¶¶ 108-16. Section 638.51 prohibits the installation or use of a "pen register" to capture routing, addressing, or signaling information without a "court order" or user "consent." Cal. Penal Code § 638.51. Plaintiffs assert that, because the third-party Trackers receive website visitors' IP addresses "without their consent or a court order," they constitute illegal "pen register[]" activity under Section 638.51. Dkt. 1 at ¶ 27.[2] CoStar moved to dismiss, arguing in relevant part that Plaintiffs do not have standing because they lack a privacy interest in their IP addresses, which they voluntarily shared on the internet.

On October 22, 2025, the district court denied CoStar's motion. Dkt. 41. As relevant here, the court held that Plaintiffs have alleged Article III standing based on their allegations of "IP address collection." *Id.* at 4-5. The court acknowledged that "disclosing an IP address is a basic function of internet use." *Id.* at 5. But the court believed that the harm alleged here arises from "the documentation of IP addresses

---

[2] Although each Plaintiff's individual exposure to CoStar's websites and targeted advertising is disjoined, "each Plaintiff allegedly visited at least one of [CoStar's] websites and had their IP addresses recorded and disseminated via [the Trackers]." Dkt. 41 at 5; *see id.* at 2-3.

disclosed in the normal course of internet use that are then provided to third parties without Plaintiffs' consent." *Id.* In other words, the court reasoned, "the issue is not about Plaintiffs' expectation of privacy in transmitting their IP address to [CoStar] for *its* use, it is about [CoStar's] alleged transmission of the IP address to others with whom Plaintiff did not share the address." *Id.* The court also pointed to Plaintiffs' unadorned assertion that the "data underpinning targeted advertising is economically valuable." *Id.* Taken together, the court held, these allegations "as to the collection and dissemination of [Plaintiffs'] IP addresses allege a cognizable injury in fact." *Id.* In doing so, the court purported to take a position "in line with" other district courts in the Ninth Circuit. *Id.* at 4-5.

CoStar then moved for interlocutory-appeal certification under Section 1292(b). In an order entered on February 17, 2026, the district court granted that motion and certified its October 22, 2025 order for interlocutory appeal. Dkt. 52. The court held that "each of the certification requirements" under Section 1292(b) is satisfied, and that obtaining appellate resolution on the Article III standing question "at this stage in this case—and across the many other cases within the district disagreeing about the same issue—will materially advance litigation both in this case and more broadly." *Id.* at 2-4.

**REASONS FOR GRANTING THE PETITION**

This Court may permit an appeal of an interlocutory order when the district court has certified that (1) the order "involves a controlling question of law"; (2) there is "substantial ground for difference of opinion" as to that question; and (3) an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 687-88 (9th Cir. 2011). As the district court correctly concluded, its order denying CoStar's motion to dismiss satisfies Section 1292(b)'s criteria and warrants interlocutory review by this Court. *See* Dkt. 52.

**A.  The Order Involves A Controlling Question Of Law**

The Article III standing question certified by the district court is plainly a "controlling question of law." Dkt. 52 at 2-3. To begin with, "[s]tanding is a question of law." *Hartman v. Summers*, 120 F.3d 157, 159 (9th Cir. 1997). And the Article III standing question at issue here—concerning the alleged collection and dissemination of IP addresses to third parties—does not present any "factual issue." Dkt. 52 at 3. Those allegations are assumed to be true for present purposes, and the question is whether such allegations—which are similar to allegations in numerous CIPA cases, *see infra* at 9-12, 14—demonstrate a cognizable Article III injury. That is a legal question.

That question is also controlling. "[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). The question need not dispositively "resolve all of [the] claims" in the case, *Reese*, 643 F.3d at 688, and it may be a question "collateral to the merits," *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996) (citation omitted). In particular, an order "may involve a controlling question of law if it could cause the needless expense and delay of litigating an entire case in a forum that has no power to decide the matter." *Id.*

The district court correctly recognized that the standing question presented here is a controlling legal question. Dkt. 52 at 3. If Plaintiffs lack standing, the case is not a justiciable "Case[]" or "Controvers[y]" under Article III, meaning that it is beyond the "federal judicial power" and must not proceed. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). And while Plaintiffs allege harm to a "privacy interest" and an "economic" interest from the transmission of their IP addresses, the district court made clear that it denied CoStar's motion to dismiss only because those theories are intertwined. Dkt. 52 at 3. At a minimum, determining whether Plaintiffs may allege standing based on the transmission of IP addresses to third parties would "narrow[]

8

the case in a meaningful way" and therefore qualifies as a "controlling question." *Id.*; *see Cement*, 673 F.2d at 1026.

### B. There Is Substantial Ground For Difference Of Opinion

As the district court recognized, there is "substantial ground for difference of opinion" on the Article III standing question presented here. Dkt. 52 at 3. A "substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution." *Reese*, 643 F.3d at 688. This prong is accordingly satisfied when the legal issue consists of a "novel and difficult question[] of first impression," *id.* (citation omitted), as well as when lower courts "are in dispute on the question and [this Court] has not spoken on the point," *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (citation omitted).

This standard is amply satisfied here. Not only is the Article III standing question presented in this case a question on which reasonable jurists might disagree—numerous jurists *have* disagreed. As the district court observed, "[d]istrict [c]ourts within the Ninth Circuit are split" on whether the transmission of IP addresses and similar information to third parties is enough to demonstrate standing. Dkt. 52 at 3. The district court, for its part, purported to identify a handful of cases consistent with its conclusion that such allegations are enough to establish standing. *Id.* (citing *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 932 (N.D. Cal.

2024); *Mirmalek v. L.A. Times Commc'ns LLC*, No. 24-cv-01797, 2024 WL 5102709, at *4 (N.D. Cal. Dec. 12, 2024); *Keskinen v. Lush Handmade Cosms. LLC*, 770 F. Supp. 3d 1234, 1244 (C.D. Cal. 2025)).[3]

On the other hand, as the district court also recognized, there are "several cases that [have] come out differently" on the Article III standing question. Dkt. 52 at 3. For example, in *Khamooshi v. Politico LLC*, the court rejected a theory of standing that is virtually identical to the one asserted here: the plaintiffs alleged that "third-party trackers embedded on [the defendant's website] collected [the plaintiffs'] information," including their "IP address[es]." 786 F. Supp. 3d 1174, 1177 (N.D. Cal. 2025). The court held that the plaintiffs failed to allege a "concrete injury," explaining that "IP addresses do not implicate a legally protectable privacy interest," and that "the information at issue here—an IP address—is not sufficiently private or personal to be analogous to the type of harm recognized in traditional privacy torts." *Id.* at 1179-81. Accordingly, the disclosure of this non-private information to others "do[es] not amount to a cognizable privacy injury under Article

---

[3] Notably, only one of the cases cited by the district court purported to consider "Article III standing." *Keskinen*, 770 F. Supp. 3d at 1244. The other two, by contrast, considered "statutory standing" under CIPA. *Shah*, 754 F. Supp. 3d at 932; *see Mirmalek*, 2024 WL 5102709, at *4 (relying on *Shah*'s analysis of "statutory standing"). It is well-settled that the "issue of *statutory* standing . . . has nothing to do with whether there is a case or controversy under Article III." *Steel Co.*, 523 U.S. at 97; *see Shulman v. Kaplan*, 58 F.4th 404, 409 (9th Cir. 2023) (distinguishing between "statutory standing" and "Article III standing").

III." *Id.* at 1181-82. The court also rejected the plaintiffs' attempt to convert the transmission of their non-private IP addresses into an "economic harm" for purposes of standing. *Id.* at 1182-83.

Similarly, in *Wooten v. BioLife Plasma Services L.P.*, the court held that the "dissemination of plaintiffs' IP and email addresses[] through the third-party trackers" did not "sufficiently impact[] plaintiffs' privacy interests to give rise to a concrete injury." No. 25-cv-00099, 2025 WL 2979619, at *3 (E.D. Cal. Oct. 22, 2025). As in *Khamooshi*, the *Wooten* court explained that "there is no legally protected privacy interest in an IP address" and that the "[d]isclosure of one's email address and IP address, without more, does not bear similarity to the 'highly offensive' interferences or disclosures that were actionable at common law." *Id.*

These cases are not outliers. Numerous courts have likewise held that the "alleged collection and/or disclosure of [IP address] information to third parties does not give rise to a type of injury recognized at common law" sufficient to support Article III standing in CIPA cases. *Xu v. Reuters News & Media Inc.*, No. 24-cv-2466, 2025 WL 488501, at *3-5 (S.D.N.Y. Feb. 13, 2025); *accord, e.g.*, *Dawidzik v. Tesla, Inc.*, No. 25-cv-01982, 2025 WL 3786963, at *3-4 (C.D. Cal. Dec. 29, 2025); *Bradshaw v. Lowe's Cos.*, No. 25-cv-0742, 2025 WL 3171740, at *5-6 (S.D. Cal. Nov. 12, 2025); *Rodriguez v. Culligan Int'l Co.*, No. 25-cv-00225, 2025 WL 3064113, at *3-4 (S.D. Cal. Nov. 3, 2025); *Mitchener v. CuriosityStream, Inc.*, No.

11

25-cv-01471, 2025 WL 2272413, at *4-5 (N.D. Cal. Aug. 6, 2025); *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-01473, 2025 WL 1745726, at *3-4 (N.D. Cal. June 24, 2025).

All of those cases are directly at odds with the district court's conclusion here that Plaintiffs have standing based on the "collection" and "transmission of the[ir] IP addresses" to third parties. Dkt. 41 at 4-5. The "divergent cases on this topic" demonstrate that there is a "substantial ground for difference of opinion" and "weigh in favor of interlocutory certification." Dkt. 52 at 3.

**C.** **An Interlocutory Appeal May Materially Advance The Termination Of This Litigation**

The third prong of Section 1292(b) is also satisfied because, as the district court correctly recognized, permitting an "immediate appeal may materially advance the litigation" to conclusion. Dkt. 52 at 4. "[T]he 'materially advance' prong is satisfied when the resolution of the question 'may appreciably shorten the time, effort, or expense of conducting' the district court proceedings." *ICTSI Or.*, 22 F.4th at 1131 (citation omitted); *see Sterling v. Feek*, 150 F.4th 1235, 1247 (9th Cir. 2025). The interlocutory appeal need not "have a final, dispositive effect on the litigation"; the question is only whether "it 'may materially advance' the litigation." *Reese*, 643 F.3d at 688 (citation omitted).

Resolving the threshold Article III standing question now may materially advance the litigation. Indeed, it may well be dispositive insofar as the Court would

determine "whether Plaintiffs have standing" based on the theories they have alleged. Dkt. 52 at 4. If the Court were to conclude that Plaintiffs lack standing, that would end the case entirely. And even if Plaintiffs were, for example, permitted to try to amend their complaint, articulating the correct approach to determining Article III standing in cases like this one would provide "clari[ty]" and certainty on this "fundamental" issue going forward. *Sterling*, 150 F.4th at 1247. Accordingly, "interlocutory review [would] materially advance[] the litigation." *Id.*

**D.    The Court Should Exercise Its Discretion To Review This Important Question**

The Section 1292(b) conditions are satisfied in this case, and this Court should exercise its discretion in favor of permitting this interlocutory appeal. *See ICTSI Or.*, 22 F.4th at 1131. The Article III standing question presented here is undeniably important. Indeed, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341-42 (2006) (alteration in original) (citation omitted). It is therefore unsurprising that this Court has routinely granted petitions for interlocutory appeals to resolve unsettled questions of Article III standing. *See, e.g., Healy v. Milliman, Inc.*, 164 F.4th 701, 705 (9th Cir. 2026); *Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 848 (9th Cir. 2020); *Juliana v. United States*, 947 F.3d 1159, 1165-66 (9th Cir. 2020); *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1000 (9th Cir. 2001).

13

Appellate resolution of the Article III question here is especially important because, as the district court recognized, this is not a one-off case. *See* Dkt. 52 at 3-4. To the contrary, over the past few years, the plaintiffs' bar has inundated federal courts with class action suits under CIPA based on the alleged transmission of IP addresses to third parties. *See, e.g.*, Jeffrey M. Stefan II & Neil E. Youngdahl, *The Rise of CIPA Website Tracking Claims*, Nat'l L. Rev. (Feb. 17, 2026), https://perma.cc/LW5D-DF86 ("Thousands of CIPA website tracking claims have been asserted, and filings continue to rise."); *see also Kishnani*, 2025 WL 1745726, at *2 ("In this year alone, counsel for Plaintiff . . . has filed at least fifteen substantively identical [CIPA] cases in a California federal district court."); *Xu*, 2025 WL 488501, at *3 n.5 ("Xu's pleading appears nearly identical to at least six other complaints filed by Xu's counsel . . . in this District, in the span of eight months, alleging similar claims under CIPA."). Because the law governing the threshold standing question in such suits is unsettled, the parties in those suits must brief—and the district courts must consider—the same questions of standing each time. Resolving this issue at an appellate level would provide valuable "clari[ty]" not only for "this case" but "across the many other cases within the [Circuit] disagreeing about the same issue." Dkt. 52 at 4.

The dynamics of CIPA litigation also favor granting the petition in this case. Litigation under CIPA against website operators has become a cottage industry for

plaintiffs and their attorneys. The litigation—often brought by "tester" plaintiffs, *see Khamooshi*, 786 F. Supp. 3d at 1182—has targeted an array of businesses in hopes of extracting a settlement. Indeed, for every CIPA suit filed in court, several more are threatened in demand letters and settled privately. *See* Sarah Miller & Elizabeth Sperling, *With Rising CIPA Claims, Here's How to Safeguard Your Business*, Bloomberg Law (Feb. 13, 2026), https://news.bloomberglaw.com/legal-exchange-insights-and-commentary/with-rising-cipa-claims-heres-how-to-safeguard-your-business. The "demands are often low enough that fighting the allegations in court is more expensive than simply paying the settlement demand," forcing companies to "make the unpleasant business decision of paying the demands rather than spending more on legal fees to win on the merits." *Id.* And in litigated cases, the pressure to settle only increases after the motion-to-dismiss stage. *See Cunningham v. Cornell Univ.*, 604 U.S. 693, 710 (2025) (Alito, J., concurring) ("[I]n modern civil litigation, getting by a motion to dismiss is often the whole ball game because of the cost of discovery."). Given that reality, most cases settle, and few will make it to this Court for appellate review. This petition accordingly provides the Court with an important opportunity to resolve this unsettled question of Article III standing. The Court should take it.

## CONCLUSION

The petition for permission to appeal should be granted.

Dated:  February 27, 2026

Alexander C.K. Wyman
LATHAM & WATKINS LLP
355 South Grand Avenue
Suite 100
Los Angeles, CA 90071
(213) 485-1234

Nicholas J. Boyle
Blake E. Stafford
LATHAM & WATKINS LLP
555 Eleventh Street NW
Suite 1000
Washington, DC 20004
(202) 637-2200

Respectfully submitted,

 /s/ *Michael H. Rubin*
Michael H. Rubin
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
(415) 395-0600
michael.rubin@lw.com

*Counsel for Defendant-Petitioner CoStar Group, Inc.*

16

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Defendant-Petitioner CoStar Group, Inc. states that it is unaware of any related cases currently pending in this Court.

**CERTIFICATION OF COMPLIANCE**

This petition complies with the type-volume limitation of Ninth Circuit Rule 5-2(b) and 32-3(2) because this petition contains 3,682 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

This petition complies with the typeface requirements and type-style requirements of Federal Rule of Appellate Procedure 32(a) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font type.

Dated:  February 27, 2026                          /s/ Michael H. Rubin
                                                            Michael H. Rubin

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)**  To be assigned

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**
[   ] I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**
[ x ] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

| | | |
|---|---|---|
| Kim E. Miller | Melissa H. Harris | Don Bivens |
| KAHN SWICK & FOTI, LLC | KAHN SWICK & FOTI, LLC | DON BIVENS PLLC |
| 1901 Avenue of the Stars | 1100 Poydras Street | 15169 N. Scottsdale Road |
| 2nd Floor | Suite 960 | Suite 205 |
| Los Angeles, CA 90067 | New Orleans, LA 70163 | Scottsdale, AZ 85254 |
| kim.miller@ksfcounsel.com | melissa.harris@ksfcounsel.com | don@donbivens.com |

**Description of Document(s)** *(required for all documents)***:**

Petition for Permission to Appeal Pursuant to 28 U.S.C. § 1292(b); Addendum to Petition for Permission to Appeal Pursuant to 28 U.S.C. § 1292(b)

**Signature** *s/Michael H. Rubin*                                    **Date** February 27, 2026
*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 15**                                                                                               *Rev. 12/01/18*

# ADDENDUM

# Pursuant to Federal Rule of Appellate Procedure 5(b)(1)(E)

## TABLE OF CONTENTS

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| A | Order Denying Defendant's Motion to Dismiss, Dkt. 41 (entered Oct. 22, 2025) |
| B | Order Granting Defendant's Motion for Order Certifying Interlocutory Appeal Pursuant to 28 U.S.C. § 1292, Dkt. 52 (entered Feb. 17, 2026) |

# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 25-1047 JGB (SPx)** | | Date | October 22, 2025 |
|---|---|---|---|---|
| Title | *Dywanna Drummer, et al. v. CoStar Group, Inc.* | | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **Order (1) DENYING Defendant's Motion to Dismiss (Dkt. No. 31); and (2) VACATING the October 27, 2025, Hearing (IN CHAMBERS)**

Before the Court is a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by Defendant CoStar Group, Inc.'s ("CoStar" or "Defendant"). ("Motion," Dkt. No. 31.) The Court determines this matter is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering all papers filed in support of and in opposition to the Motion, the Court **DENIES** Defendant's Motion. The October 27, 2025, hearing is **VACATED**.

## I.  BACKGROUND

On April 30, 2025, Plaintiffs Cynthia Rubio, Dywanna Drummer, Schalise Lee, Anthony D'Antonio, and Mary Lee Wallace filed a class complaint against Defendant. ("Complaint," Dkt. No. 1.) The Complaint alleges one cause of action: a violation of the California Invation of Privacy Act ("CIPA"), California Penal Code § 638.51. (See Compl.) On July 11, 2025, Defendant filed this Motion. (See Motion.) Plaintiffs filed their Opposition on September 4, 2025. ("Opposition," Dkt. No. 33.) Plaintiffs also filed a notice of supplemental authority on September 8, 2025. ("Supp. Auth.," Dkt. No. 34.) Defendant replied on September 25, 2025. ("Reply," Dkt. No. 35.)
//
//
//
//
//

| Page 1 of 8 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk mg |
|---|---|---|

## II.    FACTUAL ALLEGATONS

Plaintiffs allege the following facts, which are assumed to be true for the purposes of this motion.  See Am. Fam. Ass'n, Inc. v. City & Cnty. of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002).

CoStar, which owns the websites Apartments.com and Homes.com, has installed tracking software ("trackers") on its websites on behalf of third parties, including the video-sharing platform TikTok, the professional networking site LinkedIn, and the digital advertising platform The Trade Desk.  (Compl. ¶¶ 2, 7, 29, 44, 56-57.)  Through the implementation of "pixels, cookies, code snippets, and other technologies, these trackers surreptitiously capture" site users' internet protocol ("IP") addresses and other personal information, and then disclose these IP addresses to third parties to aid in their marketing, advertising, and analytics.  (Id. ¶ 3.)  IP addresses contain sufficient information to identify the user's zip code, which allows those who have an IP address to target advertising toward it based on geographic location.  (Id. ¶ 24.)  The trackers capture "routing, addressing, or signaling information," without website visitors' consent or a court order, which Plaintiffs allege constitutes illegal pen registers under CIPA.  (Id. ¶ 4.)

Specifically, Plaintiffs allege that, when a user visits one of CoStar's websites, the user's browser sends a request to CoStar's servers and Costar's servers respond to the browser with a set of instructions for loading and displaying the webpage content.  (Id. ¶ 20.)  This response also causes third-party trackers to be installed on the user's browser, which sends the trackers identifying information, including the user's IP address.  (Id. ¶ 21.)  When a user visits the website later, the tracker identifies the user as a prior site visitor and sends the user's IP address to the third party to whom the tracker belongs.  (Id. ¶¶ 21-22.)  The trackers also assign an identifier to a user such that, when they start a new browser session even from a different IP address, the user can be followed to that new session.  (Id. ¶ 32.)  The third parties to whom the trackers belong, like TikTok and LinkedIn, can more accurately target advertising as a result of collecting IP addresses, which earns CoStar additional revenue.  (Id. ¶ 25.)  The personal information CoStar collects and distributes has economic value to Plaintiffs.  (Id. ¶ 26.)

Plaintiff Dywanna Drummer is a resident of Lancaster, California, and visited Apartments.com numerous times, including on or about February 8, 2025.  (Id. ¶ 9.)  Ms. Drummer has a TikTok account and a LinkedIn account, and had both at the time she visited Apartments.com.  (Id. ¶¶ 66-67.)  Plaintiff Schalise Lee is a resident of Elk Grove, California, and visits Apartments.com once or twice a month, including in January 2025.  (Id. ¶ 10.)  Plaintiff Cynthia Rubio is a resident of Bakersfield, California and visits the Homes.com website on a weekly basis, including in January 2025.  (Id. ¶ 11.)  Ms. Rubio has a TikTok account and a LinkedIn account, and had both at the time she visited Apartments.com.  (Id. ¶¶ 78-79.)  Plaintiff Mary Lee Wallace is a resident of Bakersfield, California, and visits the Homes.com website on a weekly basis, including in January 2025.  (Id. ¶ 12.)  Plaintiff Anthony D'Antonio is a resident of Mountain View, California, and has visited Homes.com multiple times, including on

or about March 3, 2025.  (Id. ¶ 13.)  Mr. D'Antonio has a LinkedIn account and had one at the time he visited Homes.com.  (Id. ¶ 93.)

None of the Plaintiffs consented to CoStar installing the trackers on their browsers.  (See Id. ¶¶ 65-98.)  Ms. Wallace alleges that, after searching Homes.com, she received an advertisement for Homes.com that featured a realtor in a location where she had been looking at homes on the website.  (Id. ¶ 86.)  Mr. D'Antonio alleges that, several days after visiting Homes.com, he visited another website and saw an advertisement for the exact same home he had previously looked at on Homes.com.  (Id. ¶ 94.)

## III.  LEGAL STANDARD

### A.  Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction.  "When a defendant moves to dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of proving that the court has jurisdiction to decide the claim."  Espino v. Regents of the Univ. of California, 666 F. Supp. 3d 1065, 1078 (C.D. Cal. 2023) (citing Thornhill Publ'n Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979)).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  A "district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."  Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014) (citing Pride v. Correa, 719 F.3d 1130, 1133 (9th Cir. 2013)).  Where a suit lacks standing, the Court lacks subject matter jurisdiction and the suit should be dismissed.  See Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004).

### B.  Rule 12(b)(6)

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).  Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

## C. Rule 15

Rule 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" Eminence Cap., L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation omitted).

## IV.   DISCUSSION

## A. Standing

Defendant first argues that Plaintiffs have failed to sufficiently allege standing. (Mot. at 4-7.) To bring a case in federal court, a Plaintiff must have standing. Establishing standing requires that a plaintiff "show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion LLC v. Ramirez, 594 U.S. 413, 423, 141 S. Ct. 2190, 2203, 210 L. Ed. 2d 568 (2021) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–561 (1992)). The Court was clear in TransUnion that "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." Id. at 427 (emphasis in original).

District courts throughout the Ninth Circuit have repeatedly found—subsequent to TransUnion—that CIPA claims for IP address collection similar to Plaintiffs' establish standing.

See, e.g., Vishal Shah v. Fandom, Inc., 754 F. Supp. 3d 924, 932 (N.D. Cal. 2024); Mirmalek v. L.A. Times Communs. LLC, 2024 U.S. Dist. LEXIS 227378, at *13 (N.D. Cal. Dec. 12, 2024); Keskinen v. Lush Handmade Cosmetics LLC, 770 F. Supp. 3d 1234, 1244 (C.D. Cal. 2025). Defendant characterizes Plaintiffs' allegations as challenging the basic function of the internet through the collection of IP addresses and that Plaintiffs have no privacy interest in their IP addresses. (See Mot. at 11; Heeger v. Facebook, Inc., 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020).) It is true that disclosing an IP address is a basic function of internet use. But Plaintiffs' complaint goes further—their concern is with the documentation of IP addresses disclosed in the normal course of internet use that are then provided to third parties without Plaintiffs' consent or other compliance with CIPA. As to Defendant's claim that there is no reasonable expectation of privacy in an IP address, the issue is not about Plaintiffs' expectation of privacy in transmitting their IP address to Defendant for *its* use, it is about Defendant's alleged transmission of the IP address to others with whom Plaintiff did not share the address. This distinguishes Plaintiffs' case from, for example, the plaintiffs in Heeger v. Facebook, Inc., where the plaintiffs alleged that Facebook used their IP addresses for advertising itself after plaintiffs provided their IP addresses directly to Facebook. See 509 F. Supp. 3d 1182, 1186 (N.D. Cal. 2020). Plaintiffs also allege that this collection and transmission economically harms Plaintiffs, because such data underpinning targeted advertising is economically valuable. (Compl. ¶ 26.) Thus, the Court does not hold that Plaintiffs have established standing merely by alleging a violation of CIPA—rather, the Court finds that Plaintiffs' *specific* allegations as to the collection and dissemination of their IP addresses allege a cognizable injury in fact.

Defendant also focuses on the fact that not every named Plaintiff had every social media account or visited every website at issue. (See, e.g., Reply at 2-3.) While this is true, the harm Plaintiffs allege—the surreptitious collection and transmission of their economically valuable IP addresses for purposes of targeted tracking—is not dependent on whether they actually *received* targeted advertisements. Thus, the fact that each Plaintiff allegedly visited at least one of Defendant's websites and had their IP addresses recorded and disseminated via trackers is sufficient.

In line with myriad other district courts, the Court finds that Plaintiffs have sufficiently alleged an injury in fact and established standing. The Court **DENIES** Defendant's Motion under Rule 12(b)(1).

**B. Sufficiency of Pleadings**

Next, Defendant argues that the trackers at issue in this case are not pen registers as contemplated by CIPA. Defendant relies on the historical understanding of a pen register as a device attached to a telephone line to capture a list of outgoing phone numbers. (Mot. at 8.) Attempting to place IP address collection beyond the law's scope, Defendant contends that the trackers receive source information from IP addresses that are sent *to* the website, rather than outgoing information from the website. (Id. at 9.)
//
//

---

As other district courts have recognized, California's pen register "definition is specific as to the type of data a pen register collects—'dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted,' but it is vague and inclusive as to the form of the collection tool—'a device or process.'" Greenley v. Kochava, Inc., 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) (quoting Cal. Pen. Code § 538.50(b)); see also Shah, 754 F. Supp. 3d at 929 ("By the plain meaning of [Cal. Pen. Code] § 638.50(b), collection of the recipient phone number or IP address is not a required element. All that is required is that the Trackers record addressing information transmitted by the user's computer or smartphone in connection with the outgoing HTTP request to [the defendant's] website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue.").[1]

IP addresses would appear to fall, at the very least, in the "addressing" category, and the trackers are plainly a "process" that collects them. Again, the role of trackers in collecting and transmitting IP addresses seems quite different than the routine receipt of an IP address for loading a website, because the trackers actually save and transmit the IP address beyond its basic use related to simple internet function. Defendant's dramatic pronouncement that finding CIPA to cover IP addresses in this situation "exposes virtually every website operator to CIPA liability" is hardly plausible. (See Mot. at 11-12.) Plaintiffs' Complaint is concerned with Defendant recording and transmitting their IP addresses beyond their basic use in accessing Defendant's websites. By visiting Defendant's websites, Plaintiffs have clearly consented to disclosing their IP addresses for the purpose of loading the website, so CIPA would not apply. See Cal. Pen. Code § 638.51(b)(5) (creating a consent-based exception to the statute). It is the *further* retention and transmission of their IP addresses that concerns Plaintiffs. Defendant has failed to persuade the Court that liability for *further* use of IP addresses would interrupt basic internet function.

Defendant also contends that Plaintiffs have alleged only that the trackers collect IP addresses, in which they have no expectation of privacy. (Mot. at 5.) Yet Plaintiffs' Complaint is clear that, "On information and belief, CoStar has enabled [a certain] feature [on the TikTok tracker] and, therefore, in addition to IP addresses and other identifying browser information, it

---

[1] The state superior court decisions Defendant cites are unpublished. While federal courts "may consider unpublished state decisions, . . . such opinions have no precedential value." Emplrs Ins. of Wausau v. Granite State Ins. Co., 330 F.3d 1214, 1220 n.8 (9th Cir. 2003). Additionally, at least some of these state cases appear to be based on far less comprehensive complaints than those submitted by Plaintiffs. See, e.g., Casillas v. Transitions Optical, Inc., 2024 WL 4873370, at *4 (Cal. Super. Sep. 09, 2024) ("Beyond hypothetical scenarios, the only specific act the FAC alleges is that when Plaintiff used her computer voluntarily to access [the defendant's] website, Defendant 'collected Plaintiff's IP address.'"); Licea v. Hickory Farms LLC, 2024 WL 1698147, at *4 (Cal. Super. Mar. 13, 2024) ("At a minimum, it remains unclear from the conclusively pled complaint how Plaintiff's information was acquired, including initiation from a visit to the [defendant's] website, and whether any protocols were violated from said visit.").

also captures any form data inputted by users on the Websites, such as the user's name, date of birth, and address." (Compl. ¶ 41.) Even if IP addresses were insufficient on their own—and as discussed in the Standing section, in the context of this case they are sufficient—Plaintiffs have gone further and alleged additional information.

Finally, Defendant argues that Section 638.51 does not apply because Plaintiffs' claims cover the contents of communications. Plaintiffs deny that their claims cover the contents of communications, (see Opp'n at 22), but in any event, it is not apparent from the face of CIPA that it excludes pen registers that may also collect some additional information. The statute defining a pen register construes it as "a . . . process that records or decodes . . . addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Pen. Code § 638.50. As another district court recently held, "[t]he statute does not, through its language alone, clarify whether it establishes two entirely nonoverlapping zones of regulation" for devices or processes that capture addressing information and those that collect the contents of communications. In re Meta Pixel Tax Filing Cases, 2025 WL 2243615, at *4 (N.D. Cal. Aug. 6, 2025). "Given CIPA's purpose to protect Californians' privacy, it is highly unlikely that the Legislature intended to permit the installation and use of pen registers so long as those devices also record the contents of a third party's communications." Id., at *5. The Court here agrees.

Additionally, Defendant focuses specifically on an IP address's capacity to provide geolocation data. (Mot. at 14.) Under the statute, "[i]nformation acquired solely pursuant to the authority for a pen register or a trap and trace device shall not include any information that may disclose the physical location of the subscriber, except to the extent that the location may be determined from the telephone number." Cal. Pen. Code § 638.52(c).[2] Based on Plaintiffs' allegations as to the function of IP addresses, the numbers in the address themselves provide geolocation data. This would appear to be similar to the geolocation information that can be gleaned from a phone number's area code, which is specifically covered by Section 638.52. Defendant has not contested this description of how geolocation information is transmitted by an IP address, or why geolocation information from an IP address invalidates Plaintiffs' claims.

Having failed to demonstrate that Plaintiffs' Complaint insufficiently pleads liability under Section 638.51, Defendant's Motion is **DENIED**.

_____

[2] The Court acknowledges that this section of CIPA specifically refers to pen registers recording telephone numbers, which Defendant reads to constrain the entire statutory scheme to telephone communications. (See Mot. 14-15.) The Court, as have other district courts, declines to do so based on the expansive language of Section 638.51, as discussed above. Instead, the Court sees the California legislature's reference to telephones in this instance as demonstrating its capacity to specify applicability to telephones when it wants to, which supports a broader reading of Section 638.51 since it does not specifically reference telephones. In that sense, Section 638.52 perhaps does not apply to pen registers that collect IP addresses and only to pen registers that collect telephone information, which further undermines any authority Section 638.52 would have in invalidating Plaintiffs' allegations.

## V.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion.  The October 27, 2025, hearing is **VACATED**.

**IT IS SO ORDERED.**

# EXHIBIT B

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 25-1047 JGB (SPx)** | Date | February 13, 2026 |
|---|---|---|---|
| Title | ***Dywanna Drummer, et al. v. CoStar Group, Inc.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    **Order (1) GRANTING Defendant's Motion for an Order Certifying Interlocutory Appeal Pursuant to 28 U.S.C. § 1292 (Dkt. No. 45); and (2) VACATING the February 23, 2026, Hearing (IN CHAMBERS)**

Before the Court is a motion by Defendant CoStar Group, Inc. to certify for interlocutory review this Court's October 22, 2025 Order denying Defendant's motion to dismiss. ("Motion," Dkt. No. 45.)  The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion.  The February 23, 2026, hearing is **VACATED**.

## I.  BACKGROUND

On April 30, 2025, Plaintiffs Cynthia Rubio, Dywanna Drummer, Schalise Lee, Anthony D'antonio, and Mary Lee Wallace ("Plaintiffs") filed a putative class complaint against Defendant CoStar Group, Inc. ("Defendant" or "CoStar").  ("Complaint," Dkt. No. 1.)  The Complaint alleges one cause of action: a violation of the California Invasion of Privacy Act ("CIPA"), California Penal Code § 638.51.  (See Compl.)  On July 11, 2025, Defendant filed a motion to dismiss, which the Court denied on October 22, 2025.  ("MTD Order," Dkt. No. 41.)

On December 22, 2025, Defendant filed the instant Motion.  (Mot.)  In support, Defendant filed the Declaration of Alexander C.K. Wyman.  ("Wyman Decl.," Dkt. No. 46.)  Plaintiffs opposed on January 21, 2026.  ("Opposition," Dkt. No. 49.)  In support, they filed the Declaration of Melissa H. Harris.  ("Harris Decl.," Dkt. No. 50.)  Defendant replied on February 4, 2026.  ("Reply," Dkt. No. 51.)

---

**CIVIL MINUTES—GENERAL**    Initials of Deputy Clerk <u>mg</u>

## II. LEGAL STANDARD

District court rulings generally cannot be appealed until after the entry of final judgment. <u>See</u> 28 U.S.C. § 1291. Still, there are situations in which "appellate review of a particular ruling will materially advance disposition of the claims before the trial court." <u>Morrison-Knudsen Co., Inc. v. Archer</u>, 655 F.2d 962, 966 (9th Cir. 1981). In such cases, "the appropriate procedure for the district court is to certify its order for interlocutory appeal under 28 U.S.C. § 1292(b)." <u>Id.</u>

Under Section 1292(b), a district court may certify an order for interlocutory appeal if (1) the order involves a "controlling question of law" about which (2) there is "substantial ground for difference of opinion"; and (3) an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); <u>see</u> <u>In re Cement Antitrust Litig.</u>, 673 F.2d 1020, 1026 (9th Cir. 1981). "Even if these requirements are satisfied, a district court still has discretion in deciding whether or not to grant a party's motion for certification." <u>In re LDK Solar Sec. Litig.</u>, 584 F. Supp. 2d 1230, 1258 (N.D. Cal. 2008).

A district court should grant an interlocutory appeal "only in exceptional situations in which allowing [such an appeal] would avoid protracted and expensive litigation." <u>Hansen v. Schubert</u>, 459 F. Supp. 2d 973, 999–1000 (E.D. Cal. 2006) (quoting <u>In re Cement Antitrust Litig.</u>, 673 F.2d at 1026). "The party seeking certification of an interlocutory appeal has the burden to show the presence of those exceptional circumstances." <u>Hansen</u>, 459 F. Supp. 2d at 1000 (citing <u>Coopers & Lybrand v. Livesay</u>, 437 U.S. 463, 475 (1978)). Indeed, Congress did not intend district courts to certify interlocutory appeals "merely to provide review of difficult rulings in hard cases." <u>U.S. Rubber Co. v. Wright</u>, 359 F.2d 784, 785 (9th Cir. 1966).

## III. DISCUSSION

Defendant moves to certify the MTD Order for interlocutory appeal on the following question: "Does the transmission to third parties of IP addresses and similar information voluntarily shared with websites constitute an injury with a close relationship to a harm traditionally recognized as a basis for a lawsuit?" (Mot. at 7.) The Court considers each of the certification requirements below. Preliminarily, however, Plaintiffs argue that Defendant's motion is untimely. (Opp'n at 6.) The Court finds Defendant's delay of two months is not untimely and therefore considers the Motion on its merits.

### A. Controlling Question of Law

First, Defendant must establish that the appeal involves a controlling question of law. A question is "controlling" if the "resolution of the issue on appeal could materially affect the outcome of litigation in the district court." <u>In re Cement Antitrust Litig.</u>, 673 F.2d at 1026.

Here, Defendant raises a controlling question of law because standing is a threshold inquiry in any case, and Defendant's position is that Plaintiffs lack standing over a component of their claim. Plaintiffs object, stating that because they possess economic standing in addition to

their privacy interest that appellate resolution of this issue would not resolve the case, nor would any dismissal of their Complaint be with prejudice.  But the Court's resolution of the issue was in tandem—the Court held that Plaintiffs' "*specific* allegations" resulted in standing.  (MTD Order at 5.)  Absent privacy-based standing as part of that equation, the analysis would need to be conducted in terms of an economic-only standing basis.  In any event, narrowing the case in a meaningful way is also sufficient to raise a controlling question of law.

Plaintiffs also argue that the proposed certification raises combined legal and factual issues that would be more appropriately addressed after further development of the record. (Opp'n at 16-19.)  The Court agrees with Defendant that the issue Defendant seeks to raise on appeal is whether the injury arose upon the sharing of Plaintiffs' data, which does not appear to be a factual issue that Defendant disputes.  The Court's MTD Order determined that Plaintiffs consented to disclosure of their IP addresses to Defendant and that it was only the subsequent transmission that presented an issue.  (MTD Order at 6.)  There is no disputed fact issue underpinning this question.

Thus, under the Ninth Circuit's test, resolution of this question on appeal would "materially affect the outcome of litigation."  In re Cement Antitrust Litig., 673 F.2d at 1026. Nevertheless, the three criteria are "'conjunctive, not disjunctive,' meaning that all three requirements must be established."  Cortez, 2018 WL 6071091, at *3 (C.D. Cal. Oct. 11, 2018) (citing Arenholz v. Board of Trustees of Univ. of Ill., 219 F.3d 674, 677 (7th Cir. 2000)).

**B.  Substantial Ground for Difference of Opinion**

Second, Defendant must show that there is substantial ground for difference of opinion regarding the question.  The "substantial ground" prong is satisfied when "novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions."  ICTSI Oregon, Inc. v. Int'l Longshore and Warehouse Union, 22 F.4th 1125, 1130 (9th Cir. 2022) (quoting Reese v. BP Expl. (Alaska) Inc., 634 F.3d 681, 688 (9th Cir. 2011)).

District Courts within the Ninth Circuit are split on this topic, suggesting a substantial ground for difference of opinion.  In issuing the MTD Order, the Court identified several cases consistent with its reasoning, including Vishal Shah v. Fandom, Inc., 754 F. Supp. 3d 924, 932 (N.D. Cal. 2024); Mirmalek v. L.A. Times Communs. LLC, 2024 U.S. Dist. LEXIS 227378, at *13 (N.D. Cal. Dec. 12, 2024); and Keskinen v. Lush Handmade Cosmetics LLC, 770 F. Supp. 3d 1234, 1244 (C.D. Cal. 2025).  At the same time, Defendant previously raised—and again references—several cases that come out differently: Wooten v. BioLife Plasma Servs. L.P., 2025 WL 2979619, at *2 (E.D. Cal. Oct. 22, 2025); Kishnani v. Royal Caribbean Cruises Ltd., 2025 WL 1745726, at *1 (N.D. Cal. June 24, 2025); and Mitchener v. CuriosityStream, Inc., 2025 WL 2272413, at *1 (N.D. Cal. Aug. 6, 2025).  (Mot. at 14-15.)  While the Court found reason to disagree with or distinguish several of these cases, that does not mean there is no grounds for difference of opinion.  The many divergent cases on this topic weigh in favor of interlocutory certification.

### C. Materially Advance the Litigation

Finally, Defendant must demonstrate that immediate appeal may materially advance the litigation—that is, the resolution of the question "may appreciably shorten the time, effort, or expense of conducting" the district court proceedings.  ICTSI Oregon, 22 F.4th at 1131 (quoting In re Cement Antitrust Litig., 673 F.2d at 1027).  Resolution of this issue will materially advance this case because it will determine whether there is a privacy basis for Plaintiffs' claims, whether Plaintiffs have standing, and whether Plaintiffs must amend their Complaint.  While the outcome of interlocutory appeal might not be entirely dispositive, clarifying these issues at this stage in this case—and across the many other cases within the district disagreeing about the same issue—will materially advance litigation both in this case and more broadly.  This factor weighs in favor of certification.

## IV.  CONCLUSION

For the above reasons, the Court **ORDERS** that Defendant's Motion is **GRANTED**. The Court's MTD Order is **CERTIFIED** for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  Within five days of Ninth Circuit's decision whether to permit the appeal, the parties shall jointly notify this Court so that this Court may stay proceedings if the appeal is permitted, or so that the Court may take next steps as necessary should the case continue here.

**IT IS SO ORDERED.**